{¶ 1} Mary Parnell filed this action in mandamus seeking a writ which compels the Industrial Commission of Ohio ("commission") to grant a writ of mandamus to order the commission to modify its order reinstating her temporary total disability ("TTD") compensation.
 {¶ 2} In accord with Loc.R. 12(M), the case was referred to a magistrate to conduct appropriate proceedings. The parties stipulated the pertinent evidence and filed briefs. The magistrate then issued a magistrate's decision which includes a recommendation that we refuse the requested relief. (Attached as Appendix A.)
 {¶ 3} No party has filed objections to the magistrate's decision. The case is now before the court for review.
 {¶ 4} No error of law or fact is present on the face of the magistrate's decision. We therefore adopt the findings of fact and conclusions of law contained in the magistrate's decision. As a result, we deny the requested writ of mandamus.
Writ of mandamus denied.
BRYANT and KLATT, JJ., concur.
 DECISION IN MANDAMUS {¶ 5} In this original action, relator, Mary Parnell, asks the court to grant a writ of mandamus compelling respondent Industrial Commission of Ohio ("commission") to modify its order reinstating compensation for temporary total disability ("TTD") on January 8, 2002, and to reinstate TTD as of March 21, 2001.
Findings of Fact:
 {¶ 6} 1. In August 1998, Mary Parnell ("claimant") sustained an industrial injury. Her workers compensation claim was allowed for conditions including sprains of the neck, lumbar and thoracic spine as well as a central extrusion (transligamentous herniation) at L5-S1.
 {¶ 7} 2. In May 1999, claimant underwent extensive surgery including an L5-S1 laminectomy, facetectomy and foraminotomy. Claimant received TTD compensation.
 {¶ 8} 3. Claimant was referred to rehabilitation and was awarded living maintenance benefits for the duration of her rehabilitation program.
 {¶ 9} 4. On August 24, 2000, claimant's physician, Dr. Luna, opined that she had reached maximum medical improvement ("MMI") for the allowed conditions.
 {¶ 10} 5. In February 2001, the Ohio Bureau of Workers' Compensation terminated TTD. Claimant appealed and also changed her physician of record to Dr. Ho-Young Chung, who began treating her in March 2001.
 {¶ 11} 6. On March 26, 2001, a district hearing officer ("DHO") heard the appeal, affirming the termination of TTD as of August 24, 2000. However, the DHO noted that living maintenance benefits continued through February 4, 2001.
 {¶ 12} 7. Also on March 26, 2001, Dr. Chung requested approval for physical therapy and reconditioning which was approved.
 {¶ 13} 8. On May 24, 2001, Dr. Chung completed a C-84 request, certifying TTD from May 21, 2001 to July 22, 2001, and stating that MMI had not been reached.
 {¶ 14} 9. In June 2001, on administrative appeal, claimant filed Dr. Chung's notes from his initial examination of March 20, 2001, when he noted that claimant "came with the complaint of low back pain since 1998." Claimant reported that, after the surgery, her leg pain was gone but that she still had back pain. She said she was found to have reached MMI at a time when her pain was getting worse. Claimant reported that heat and rest alleviated the pain. Dr. Chung recommended physical therapy, an epidural block, medication, and no work until May 20, 2001.
 {¶ 15} 10. An MRI on September 5, 2001, showed post-laminectomy status, an injection scar, persistent or recurrent disc herniation centrally and right at L5-S1, and apophyseal joint disease.
 {¶ 16} 11. Dr. Chung continued to certify TTD periodically.
 {¶ 17} 12. In October 2001, Dr. Chung requested authorization for further surgery on the lumbar disk at L5-S1 which was approved.
 {¶ 18} 13. On December 17, 2001, claimant filed a motion for reinstatement of TTD compensation beginning March 21, 2001, the date when Dr. Chung began treatment. A hearing was scheduled for January 16, 2002.
 {¶ 19} 14. In the meantime, claimant had lumbar surgery on January 8, 2002.
 {¶ 20} 15. On January 16, 2002, a district hearing officer ("DHO") heard claimant's motion and reinstated TTD compensation as of the date when claimant underwent further surgery. The DHO found that, although claimant changed doctors in March 2000 and continued to receive treatment, the treatment was not distinguishable from prior treatment rendered in the claim. The DHO viewed the ongoing treatment as maintenance treatment — until claimant underwent surgery on January 8, 2002. Accordingly, the DHO reinstated TTD compensation as of January 8, 2002.
 {¶ 21} 16. A staff hearing officer ("SHO") affirmed the reinstatement of TTD as of January 8, 2002. The SHO found that "there was no real change in the claimant's treatment until the time that claimant underwent surgery in an attempt to improve her condition on 1/08/02."
 {¶ 22} 17. Claimant's further appeal, with additional evidence, was refused. Conclusions of Law:
 {¶ 23} At issue is the date on which TTD compensation was reinstated. Specifically, claimant argues that the commission abused its discretion in reinstating TTD on January 8, 2002, rather than on March 21, 2001.
 {¶ 24} In the present action, TTD compensation was terminated as of August 24, 2000, based on a determination that the allowed conditions had reached MMI. That order, terminating TTD, is not at issue in this action.
 {¶ 25} However, a termination of TTD does not preclude a reinstatement of compensation if circumstances change and claimant experiences a flare-up or relapse of the allowed condition that is temporarily and totally disabling. State ex rel. Bing v. Indus. Comm. (1991), 61 Ohio St.3d 424 (relying on commission's continuing jurisdiction under R.C. 4123.52 to modify decisions when there are new and changed circumstances). Similarly, the court stated in State ex rel. Navistar Internatl. Transp. Corp. v. Indus. Comm. (1993),66 Ohio St.3d 267, that when temporary total is terminated on the basis of a return to work, a subsequent relapse can warrant an additional period of disability compensation. Also, in State ex rel. Chrysler Corp. v. Indus. Comm. (1998), 81 Ohio St.3d 158, the court noted that surgery can constitute new and changed circumstances that justify a reinstatement of TTD.
 {¶ 26} In addition, where the claimant develops a new condition, and it is allowed in the claim, a new period of TTD compensation may be awarded based on the newly allowed condition. Res judicata is not involved — and new, changed circumstances need not be shown under R.C. 4123.52 — because there is no prior order terminating TTD for that condition. See State ex rel. Basye v. Indus. Comm. (1992),64 Ohio St.3d 68.
 {¶ 27} In summary, in cases where there are no newly allowed conditions, TTD can be reinstated where there are new and changed circumstances such as a flare-up or relapse of the allowed condition or surgery for the allowed condition that causes a new period of TTD. In Bing, Navistar and Chrysler, the repeated requirement was that the claimant must demonstrate a functional change causing a disability that is both total (preventing performance of the former position of employment) and temporary, that is, where a "fundamental functional or physiological change can be expected" from further treatment. Ohio Adm. Code 4121-3-32(A)(1).
 {¶ 28} Here, TTD compensation was terminated as of August 24, 2000, on a finding of MMI. Accordingly, the question before the commission in 2002 was whether claimant had demonstrated new and changed circumstances after that date to justify a reinstatement of TTD. The commission concluded that claimant proved the requisite change of circumstances as of January 8, 2002, but not before, based on a comparison of the medical records before and after August 24, 2000.
 {¶ 29} The DHO found that, while claimant changed doctors and continued to receive treatment, the treatment was not distinguishable from prior treatment rendered in the claim; the DHO viewed the ongoing treatment as maintenance treatment. Likewise, the SHO found "no real change in the claimant's treatment until the time that claimant underwent surgery in an attempt to improve her condition on 1/08/02."
 {¶ 30} These findings were within the commission's discretion as the finder of fact. The commission has sole responsibility to weigh and interpret the evidence, and, when the evidence is susceptible of differing interpretations, the commission does not abuse its discretion in selecting one interpretation over the other. State ex rel. Burley v. Coil Packing, Inc. (1987), 31 Ohio St.3d 18; State ex rel. Copeland Corp. v. Indus. Comm. (1990), 53 Ohio St.3d 238; State ex rel. Value City Dept. Stores v. Indus. Comm., 97 Ohio St.3d 187, 2002-Ohio-5810.
 {¶ 31} Here, the commission interpreted the medical records as showing a continuation of similar circumstances rather than new events constituting a change in circumstances, and its interpretation is not demonstrably outside the bounds of the commission's discretion. Claimant has not met her burden of demonstrating an abuse of discretion.
 {¶ 32} The evidence before the court does not establish a clear legal duty on the part of the commission to award TTD earlier than January 8, 2002. In his March 2001 reports, Dr. Chung described claimant's current medical status, but he did not demonstrate, in a manner that was not subject to interpretation, that something new had occurred physically or functionally since August 2000. That is, Dr. Chung's reports are susceptible to interpretation. For example, one could view his reports as demonstrating that he simply disagreed with Dr. Luna as to whether claimant had reached MMI in August 2000 and that, contrary to Dr. Luna's assessment, he believed that more physical therapy and spinal injections could provide further improvement in claimant's functional capacity. Dr. Chung's reports may be interpreted as indicating that the back pain of which claimant complained in March 2001 had existed since at least August 2000, in that claimant reported to Dr. Chung that her back pain had not ceased after the 1999 surgery and that she felt the symptoms were already worsening at the time Dr. Luna found her to have reached MMI. Although the MRI in September 2001 supported a request for further surgery, it did not conclusively establish a temporary relapse, flare-up or exacerbation. The medical reports do not conclusively establish, in a manner that was not subject to interpretation, that a definite physical/functional change of some kind had occurred between August 24, 2000, and March 21, 2001.
 {¶ 33} Last, claimant argues that the commission, having accepted Dr. Chung's opinion regarding the surgery in January 2002 was necessarily bound to accept his other opinions. The magistrate disagrees. Dr. Chung's opinion regarding the January 2002 surgery were based on a material fact not present in the prior reports — the fact that surgery had been performed. When a claimant has surgery for the allowed conditions, the commission may determine that the surgery itself is a change in circumstances that causes a period of disability and may award TTD compensation beginning on the date of surgery; or, depending on the evidence, the commission may determine that a relapse or exacerbation of the allowed conditions occurred and constituted new and changed circumstances, and could conclude that the new development not only supports an immediate resumption of TTD but also necessitates surgery. The evaluation of the evidence and finding of facts is within the commission's sole discretion, and the court in mandamus must uphold a commission order that is supported by some evidence, even where the contrary evidence is greater in quantity and/or quality. State ex rel. Pass v. C.S.T. Extraction Co. (1996), 74 Ohio St.3d 373. In the subject orders, the commission cited some evidence to support its decision and provided an adequate rationale. Accordingly, the court cannot disturb the commission's decision.
 {¶ 34} The magistrate therefore concludes that the court should deny the requested writ.